IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| CHARLES JACKSON | * | |
| PLAINTIFF | * | |
| | * | |
| V. | * | |
| | * | CASE NO. 4:16CV00533 SWW |
| | * | |
| BILLY D. STAIR, III, ET AL. | * | |
| DEFENDANTS | * | |
| | * | |

## OPINION AND ORDER

Plaintiff Charles Jackson ("Jackson") brings this action under 42 U.S.C. § 1983, claiming that Jacksonville police officer Billy Stair ("Stair") used excessive force against him. Jackson sues Stair in his individual and official capacities, and he also names the City of Jacksonville (the "City") and the Jacksonville Police Department as defendants. Before the Court are (1) the City's motion for summary judgment [ECF Nos. 19, 20, 21], Jackson's response in opposition [ECF Nos. 33, 34, 35], and the City's reply [ECF No. 40] and (2) Stair's motion for summary judgment [ECF Nos. 22, 23, 24], Jackson's response in opposition [ECF Nos. 28, 29, 30], and Stair's reply [ECF No. 40]. After careful consideration, and for reasons that follow, the Court grants summary judgment in Defendants' favor, and the case is dismissed with prejudice.

## I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

## II. Background

On July 23, 2013, Stair responded to a dispatch call regarding a physical disturbance then in progress at Vaughn Tire, a private business in Jacksonville. A dash cam on Stair's patrol car recorded the following events.[1] Upon his arrival, Stair observed Jackson and another man walking in the parking lot, with several others following

---

[1] ECF No. 25. Defendant Stair submitted the dash cam video in support of his motion for summary judgment, and Plaintiff cites the video exhibit in opposition to summary judgment and argues that the recording supports his claims.

behind.  Stair calmly asked, "What's going on guys," and Jackson, who appeared very agitated, began walking toward Stair while yelling and pointing toward another man.  Stair told Jackson to relax, and Jackson shouted, "Get him, and I'll relax."  Stair instructed Jackson to stand by his patrol car and to keep his hands out of his pockets.  Jackson began walking toward the patrol car, but he stopped immediately in front of Stair, and shouted, "I don't have nothing in my pockets," while putting his left hand in the pocket of his shorts.  Stair then ordered Jackson to turn around, and he took his Taser from his belt.  Stair's dash cam and his Taser camera recorded that Jackson moved toward the patrol car, but he maintained an aggressive posture while facing Stair and yelling.  Stair again ordered Jackson to "turn around" and face the front of the patrol car.  Jackson failed to comply and continued yelling, and Stair warned Jackson that if he did not turn around, he would use his Taser.  Jackson turned around for a moment but immediately turned his head toward Stair and continued yelling, asking for Stair's badge number and threatening to file a complaint against him.  Stair repeatedly ordered Jackson to turn around, and Stair continued to yell, curse, and ignore Stair's orders.

Another officer, Kenneth Harness ("Harness"), arrived at the scene and attempted to handcuff Jackson, who continued yelling at the officers.  At first, Jackson appeared to put his hands behind his back and comply, but he abruptly turned around and raised his right arm, with a closed hand, toward Harness.  Stair immediately deployed his Taser, striking Jackson, who fell to the ground.  Jackson rolled on to his side, then to his back, while moving his legs and arms.  Stair ordered Jackson to "stop," and he activated his Taser a second time when Jackson failed to stop moving.  Officers then ordered Jackson

3

to lie on his stomach, but Jackson began to stand up, which prompted Stair to activate his Taser a third time. Jackson finally complied with orders to lie on his stomach, and Harness handcuffed him. According to a related police report, the incident ended with Jackson's arrest for disorderly conduct.

On July 25, 2016, Jackson filed this lawsuit pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act ("ACRA"), charging that Stair and the City, violated his constitutional rights. Jackson also claims that Stair's conduct amounted to a felony under Arkansas law, entitling him to damages under Arkansas Code § 16-118-107(a).

### III. Stair's Motion for Summary Judgment

In support of his motion for summary judgment, Stair argues that he is entitled to qualified immunity and that there are no genuine issues for trial.

**Qualified Immunity**

Section 1983 provides a cause of action for constitutional deprivations caused by persons acting under color of state law. However, the doctrine of qualified immunity shields government employees acting within the scope of their duties from suit under § 1983 so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Determining whether a defendant is entitled to qualified immunity involves a two-step inquiry. The first question is whether, taken in the light most favorable to the plaintiff, the facts show that the defendant's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If the answer is no, the

4

inquiry is over because the defendant is entitled to qualified immunity. If the answer is yes, the second question is whether the constitutional right at issue was clearly established. Id.

Jackson claims that Defendants violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights by means of an illegal seizure, excessive force and silencing "his disagreement with the company or employees of the company that serviced his truck."[2] For reasons that follow, the Court finds an absence of genuine controversy regarding these claims.

### *Applicable Constitutional Provision*

Jackson's references to the Fifth, Eighth, and Fourteen Amendments are misplaced. First, while the particular rights contained in the Bill of Rights apply to the States through the Fourteenth Amendment, the Fifth Amendment's Due Process Clause applies exclusively to federal government action, which is not at issue in this case. Second, neither the Eighth Amendment nor the Fourteenth Amendment's Due Process Clause provide a remedy for Jackson's illegal seizure and excessive force claims. Jackson's allegations place him outside the protections of the Eighth Amendment's proscription against cruel and unusual punishment, which applies only to convicted prisoners. *Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2000). Likewise, the substantive portion of the Due Process Clause has no application in this case. "Where a particular amendment provides an explicit textual source of constitutional protection

---

[2] ECF No. 1, ¶ 45.

against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). When an officer allegedly uses excessive force in the course of an investigatory stop or an arrest, the text of the Fourth Amendment, which addresses unreasonable searches and seizures, provides the pertinent source of constitutional protection. *Id*. If a plaintiff cannot prevail under the Fourth Amendment's standards, "it is a certainty he cannot win it under the seemingly more burdensome, and clearly no less burdensome, [shock-the-conscience] standard that must be met to establish a Fourteenth Amendment substantive due process claim." *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000).

*Illegal Seizure*. The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it generally requires probable cause for lawful searches and seizures. U.S. Const. amend. IV; *Katz v. United States,* 389 U.S. 347, 357 (1967). However, "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S. Ct. 1921, 1923 (1972). "On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response." *Id*. (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1879-80 (1968)).

Jackson contends that Stair committed an illegal seizure when he ordered him to turn around and face the patrol car. Accepting that Stair effected a seizure at that point,

6

he was permitted to take such steps as were reasonably necessary to protect his personal safety and maintain the status quo during the course of his investigation. *See United States v. Jones*, 759 F.2d 633, 638 (8th Cir. 1985). Stair had been called to the scene of a physical disturbance in progress, and given the volatile circumstances, he took reasonable measures to stabilize the situation and retain the *status quo*.

**Excessive Force.** All claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its objective, reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989). The test is whether the amount of force used was objectively reasonable under the particular circumstances that confronted law enforcement officers. *See Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir.2004) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir.1994)). Relevant circumstances include the threat posed by the subject, the severity of the crime, and whether the suspect resisted arrest. *Foster v. Metro. Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir.1990). Force that later seems unnecessary does not violate the Fourth Amendment if it was reasonable at the time. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 1872 (1989).

The undisputed evidence shows that Stair attempted to subdue Jackson with verbal commands and warnings, but to no avail. Jackson remained loud and confrontational

7

during the entire incident. He refused to follow instructions, he put his hand in his pocket after Stair instructed him otherwise, and he raised his arm and hand toward Harness. Faced with these circumstances, a reasonable officer in Stair's position would reasonably perceive that the extent of force employed was reasonably necessary.

***First Amendment.*** Jackson cites the First Amendment in his complaint, alleging that he "had a right to state and otherwise express his disagreement with the company or employees of the company that serviced his truck."[3] And in opposition to Stair's motion for summary judgment, Jackson argues:

> Defendants' initial decision to escalate the encounter, use force, and seize his person was wholly based on his speech. Jackson's speech was not even directed toward the shop personnel. Rather, it was an explanation of the situation directed to Officer Stair, who asked about the situation. Maybe he did not want the answer Jackson gave. Regardless, Jackson was initially seized because of his protected speech. Maybe, speech combined with his presence.[4]

To establish a claim that Stair seized Jackson and used force against him because of his speech, a First Amendment retaliation claim, Jackson must show: (1) that he engaged in a protected activity, (2) that Stair took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 812, 196 (2017), *and cert. denied*, 137 S. Ct. 814 (2017). The record is void of evidence that Stair's actions were aimed at silencing Jackson, who continued to express himself loudly

---

[3] ECF No. 1, ¶ 45.
[4] ECF No. 29, at 13.

throughout the entire encounter. Instead, Jackson took reasonable measures to prevent violence and calm a tense situation, and his actions were in response to Jackson's *conduct*, not the content of his speech. Even assuming that Stair's intervention somehow limited Jackson's ability to express himself, Stair was carrying out legitimate police functions and the incidental impact on Jackson's speech was no more than necessary.

In sum, the Court finds that Jackson has failed to present an issue for trial regarding a constitutional violation. Jackson is entitled to qualified immunity and summary judgment in his favor on Jackson's claims under § 1983 and the ACRA.[5]

**Arkansas Crime Victim Statute**

Arkansas's crime victims civil liability statute, Ark. Code Ann. § 16–118–107, provides a civil cause of action to "[a]ny person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law." Jackson asserts that he is entitled to relief under this provision because Stair's use of a Taser would constitute a felony under Arkansas law. Stair notes, correctly, that Jackson has failed to come forward with evidence demonstrating that his conduct was felonious under Arkansas law. A conviction for felony battery in Arkansas requires proof that, with the purpose of causing serious physical injury, Jackson inflicted serious physical injury. *See* Ark. Code Ann. §§ 5-13-201 & 202. No such evidence exists in this case, and the Court finds no issues for trial on this claim.

---

[5] The Arkansas Civil Rights Act (ACRA) specifically provides that a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act, see Ark. Code Ann. § 16–123–105(c), and the Arkansas Court of Appeals has relied on federal precedent to analyze an excessive-force claim under the ACRA. See Martin v. *Hallum*, 2010 Ark. App. 193, 374 S.W.3d 152 (2010).

9

## IV. City's Motion for Summary Judgment

It is well settled that a plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)(quoting *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978)).

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." *Id*. (quoting *Jane Doe A. v. Special Sch. Dist*, 901 F.2d at 642, 645 (8th Cir. 1990)). Alternatively, "custom or usage" is demonstrated by: (1) the existence of continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation. *Id*. (quoting J*ane Doe A.*, 901 F.2d at 646).

Jackson fails to allege facts or provide any evidence to support a claim for municipal liability. Furthermore, when alleged conduct does not deprive a plaintiff of a federally protected right, which is the case here, an attendant §1983 claim against a municipal employer for causing the conduct must fail. *See Olinger v. Larson*, 134 F.3d

1362, 1367 (8th Cir. 1998) ("In light of our ruling that Detective Larson and Chief Satterlee did not violate Olinger's fourth amendment rights, Olinger's claims against the City . . . must also fail."); *Abbot v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994) ("The City cannot be liable . . . whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim."); *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993)(holding that because defendant officers possessed probable cause to obtain an arrest warrant, no basis for liability existed for the city or county). Accordingly, no issues for trial exist as to claims against the City.

## V. Jacksonville Police Department

The City moves for dismissal of claims against the Jacksonville Police Department on the ground that the department is not a suable entity. The capacity to sue or be sued is determined by the law of the state in which the district court is held. *See* Fed. R. Civ. P. 17(b). Under Arkansas law, political subdivisions, including cities, are empowered to sue and be sued, *see* Ark. Code Ann. § 14-54-101, but police departments are merely divisions or departments of political subdivisions, without the capacity to sue or be sued. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 81 (8th Cir.1992)("The West Memphis Police Department and West Memphis Paramedic Services are not juridical entities suable as such. They are simply departments or subdivisions of the City government.").

The Court agrees that the Jacksonville Police Department is not subject to suit and must be dismissed as a party to this action.

## VI. Conclusion

For the reasons stated, Defendants' motions for summary judgment [ECF Nos. 19, 22] are GRANTED. There being no issues for trial, pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 12TH DAY OF MARCH, 2018.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE